# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## OXFORD DIVISION

**CARL CRAWFORD**                                                                 **PLAINTIFF**

**VERSUS**                                 **CIVIL ACTION NO.: 3:19CV013-MPM-RP**

**DESOTO COUNTY SHERIFF'S DEPARTMENT,**
**STATE OF MISSISSIPPI, EX REL., MISSISSIPPI,**
**BRIAN FALATKO, ROBERT FORBERT, DESOTO**
**COUNTY BOARD OF SUPERVISORS**                         **DEFENDANTS**

## <u>ORDER</u>

This cause comes before the court on the motion of defendants Desoto County Sheriff's

Department, *et al* for summary judgment, pursuant to Fed. R. Civ. P. 56.  Plaintiff Carl Crawford

has not responded in opposition to the motion, nor has he sought additional time to do so.  The

court, having considered defendants' submissions and having conducted an inquiry into

plaintiff's failure to respond to them, concludes that the motion is well taken and should be

granted.

This is, *inter alia*, a false arrest case arising out of a March 14, 2018 incident in which the

individual defendants Brian Falatko and Robert Forbert, each deputies with the Desoto County

Sheriff's Department, detained plaintiff and searched his vehicle at a Desoto County car wash.

The only post-discovery version of the facts at this court's disposal is that set forth in defendants'

summary judgment brief, in which they assert what they characterize as these "undisputed" facts:

> On or about March 14, 2018, Defendant Brian Falatko, at all times a DeSoto County
> Sheriff's Department Deputy, was patrolling in the area of Hwy 301 and Nail Road in
> DeSoto County.  He observed an SUV parked at a car wash near the intersection of Nail
> Road and Hwy 301.  The vehicle was parked in the far east car wash bay, and no one was
> washing the vehicle. According to Falatko, the vehicle initially appeared to be
> unoccupied.  No water was visible under the vehicle, and the concrete around the vehicle
> was also dry.  There was no indication that the vehicle had just been washed.

Defendant Falatko approached the vehicle, exited his patrol car, and walked up to the driver's side. He determined that the vehicle was occupied by a black male who was later identified as the Plaintiff, Carl Crawford. As Falatko approached the vehicle, Plaintiff had his driver's side window down, and Falatko began speaking with him. Immediately, Falatko detected an odor coming from Plaintiff's vehicle which, based upon knowledge, experience, and training, Falatko knew to be marijuana. Falatko also observed several air fresheners in the vehicle which appeared to be an attempt to mask the odor of marijuana. Defendant Falatko then asked Plaintiff to exit his vehicle, after which Falatko searched the Plaintiff for any potential weapons. Plaintiff appeared agitated and upset about being questioned. Accordingly, Defendant Falatko handcuffed him for his own protection so that Plaintiff's vehicle could be searched.

Around that moment, Deputy Robert Forbert arrived at the car wash. . . . Forbert observed that Falatko was talking with Plaintiff Crawford. Forbert was aware that this area was known as a potential spot for criminal activity; thus, in order to see if he could be of assistance to Officer Falatko, Forbert pulled into the car wash. Defendant Forbert found that Defendant Falatko had handcuffed Plaintiff Crawford, and Forbert also observed that Plaintiff was upset and agitated. Forbert assisted by placing the Plaintiff in his patrol car. At that time, Falatko searched Plaintiff's vehicle and located a pistol between the driver seat and the center console. It was a Ruger .45 caliber, with approximately 10 rounds in the magazine. Falatko ran the gun through dispatch, and it came back negative; however, when Falatko asked Plaintiff if he had ever been arrested, Plaintiff answered in the affirmative. Therefore, Falatko ran a criminal history on Plaintiff and determined that Plaintiff had a prior arrest for domestic violence and a subsequent conviction. Falatko did not find any marijuana inside of the vehicle.

Falatko then contacted Detective Mundy Quinn at the DeSoto County Sheriff's Department, and Officer Quinn advised Falatko that the handgun would have to be taken from the vehicle due to Plaintiff's prior domestic violence conviction. Quinn advised that due to federal law, Plaintiff, as an individual previously convicted of domestic violence, was not permitted to have a handgun in his possession. Forbert was also present and aware of this discovery. After the background check was completed, and finding no other outstanding issues and/or warrants for Plaintiff Crawford, the officers released him; they did not charge Plaintiff with any offense since the handgun possession was subject to a potential federal charge, not state. The entire incident lasted approximately 33 minutes; thus, Plaintiff's actual time of detention would have been less than 33 minutes. At no time did Plaintiff ever advise either officer that any part of his body had been injured or that he was hurting. Defendant Falatko prepared a written report that same day, and it is attached as an exhibit to his affidavit.

[Defendant's brief at 4 (record citations omitted)].

In his amended complaint, plaintiff alleges that he was arrested and detained without

probable cause, for which he asserts claims of false arrest, false imprisonment, robbery and

intentional infliction of emotional distress.  [Amended complaint at 4-5].  Plaintiff does not allege that defendants used excessive force against him, but he maintains that the act of leaving him handcuffed in the backseat of a patrol car caused his back to "pop" and resulted in a back injury which required surgery.  Specifically, plaintiff alleges in his amended complaint as follows:

12. Once exiting the vehicle, and producing his identification, Defendant, Officer Brian Falatko directed Plaintiff to rear of Plaintiff's vehicle.

13. At the rear of Plaintiff's vehicle, Defendants Brian Falatko and Robert Forbert patted Plaintiff down and placed Plaintiff in handcuffs. And prior to placing Plaintiffs in handcuffs, Defendants had not informed Plaintiff of the reason or reasons for the stop, seizure, and arrest of Plaintiff. Defendants, Brian Falatko, and Robert Forbert failed to find a weapon or contraband on him.

14. Thereafter, Plaintiff while handcuffed was placed in the back seat of Defendants' patrol car.

15. While being placed in the back seat of the patrol car, Plaintiff felt his back pop, and begin experiencing excruciating pain in his back, hands, and feet.

16. And while sitting in the back seat of the patrol car, Defendants'--without a search warrant, and without obtaining Plaintiff's consent—searched Plaintiff's vehicle. Plaintiff had not committed a crime in the officer's present, nor was Plaintiff wanted for the commission of a misdemeanor or a felony. Plaintiff did not have an active warrant for his arrest for any violation of the law.

17. Defendants found Plaintiffs gun in his vehicle which had been lawfully acquired by Plaintiff.

18. And after locating Plaintiff's gun in his vehicle, and not locating any contraband, Defendants removed Plaintiff from the back of their patrol car; removed the handcuffs; and told him that he could leave.

19. Once exiting the vehicle, and while walking back to Plaintiff's vehicle, Plaintiff couldn't
feel his feet; his hands were completely numb for Defendants had placed the handcuffs too tight on his wrists which cut off circulation to his hands. Further, Plaintiff experience severe pain in his lower back.

20. During Plaintiff's detention, Plaintiff became fearful, and apprehensive for Plaintiff did not
have any idea of why he was being targeted, and what Defendants would do to him.

21. Thereafter, Plaintiff had to undergo back surgery brought on by Defendants' misconduct.

[Amended complaint at 2-4].

On November 4, 2019, defendants filed a motion for summary judgment, in which the individual defendants Falatko and Forbert each asserted qualified immunity defenses. This court's Local Rule 4 required plaintiff to file a response and memorandum brief in support of the response within fourteen days of the filing of the motion, which means that the response deadline in this case fell on November 18, 2019. In spite of this fact, plaintiff did not respond to the motion for summary judgment, nor did he seek additional time to do so, and, as of the writing of this opinion, his response is over six weeks overdue.

There are, in this court's experience, few reasons which would justify a complete failure to respond such as the one described above, but it nevertheless elected, out of an abundance of caution, to contact counsel for plaintiff in order to determine the reasons for his failure to respond. This court does not believe that it was required to make this additional inquiry, since parties are required to review and respond to filings on the docket without proddings from this court.[1] Nevertheless, on Friday, January 3, 2020, this court, through its law clerk, submitted an email inquiry to plaintiff's counsel regarding the reasons for his failure to respond, with defense counsel copied on the email. After counsel had failed to respond to that email for almost three hours, and as the work day (and work week) was ending, this court's law clerk telephoned counsel for plaintiff to give him one last chance to clarify these matters.

In the phone conversation with the court's law clerk, counsel for plaintiff admitted that he had received the email inquiry from this court, but he offered no explanation for his failure to promptly respond to it. As for the reason for his failure to respond to defendant's motion,

---

[1] This court notes that the summary judgment motion was filed on the exact date of the expiration of the motions deadline set forth in the case management order in this case, and it should not have come as a surprise to plaintiff's counsel that such a motion was filed on the date in question.

counsel expressed his understanding that the motion for summary judgment sought only dismissal of the Desoto County Sheriff and that plaintiff was prepared to concede that motion. This court's law clerk pointed out that, in reality, the individual defendants had also filed motions for qualified immunity, as was clearly stated on the docket. Immediately after the phone conversation, this court's law clerk sent an email to both parties' counsel, summarizing the content of the phone conversation. The email also advised the parties that this court intended to issue a ruling on the motion for summary judgment on Monday, January 6, 2020, as it had determined to do after concluding that plaintiff lacked any good basis for failing to respond to defendants' motion.

In light of the foregoing, it should be apparent that plaintiff's failure to respond to the motion for summary judgment is completely lacking in excuse or justification. Indeed, plaintiff could have seen from the docket itself, without even bothering to read defendants' brief, that summary judgment was being sought, partly on the basis of qualified immunity, by "DeSoto County Sheriff's Department, DeSoto County, State of Mississippi, Brian Falatko, Robert Forbert." This court has considerable doubt whether counsel for plaintiff did, in fact, bother to read defendant's brief, since, if he had, he would have clearly seen several pages devoted to the argument that, as stated by a heading in bold type, "defendants Falatko and Forbert are entitled to qualified immunity." [Brief at 8-14]. As of the writing of this opinion, this court has received no further clarification from plaintiff's counsel regarding his failure to respond, and it must now determine the legal effect of the default in this case.

It should be emphasized that, while an unexcused failure to respond to a motion for summary judgment is a serious matter under any circumstances, it is uniquely damaging in the

context of a qualified immunity motion such as the one here.  As this court noted in a recent decision:

> It is well established that a defendant who "pleads qualified immunity and shows he is a governmental official whose position involves the exercise of discretion" thereby places the burden on the plaintiff to "rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law." *Pierce v. Smith*, 117 F.3d 866, 871-72 (5th Cir. 1997). "The plaintiff bears the burden of negating the defense and cannot rest on conclusory assertions, but must demonstrate genuine issues of material fact regarding the reasonableness of the official's conduct." *Gatson v. Winston County, Miss.* 2014, WL 585810, at *5 (N.D. Miss. 2014)(internal citations omitted). Therefore, it is the plaintiff, rather than the defendant, who must do most of the "heavy lifting" in the qualified immunity context.

*Young v. Bd. of Supervisors of Humphreys Cty., Mississippi*, 2018 WL 632024, at *1 (N.D. Miss. Jan. 30, 2018).  It should be apparent that, in this case, plaintiff not only failed to do the "heavy lifting" required to rebut a qualified immunity defense; he failed to even enter the gym.

To rebut a qualified immunity defense, the plaintiff must show: (1) that he has alleged a violation of a clearly established constitutional right, and (2) that the defendant's conduct was objectively unreasonable in light of clearly established law at the time of the incident.  *Waltman v. Payne*, 535 F.3d 342, 346 (5th Cir. 2008).  In *Plumhoff v. Rickard*, 134 S.Ct. 2012, 188 L.Ed.2d 1056 (2014), the Supreme Court upheld a qualified immunity defense on the basis of the "clearly established" prong, emphasizing that:

> An official sued under § 1983 is entitled to qualified immunity unless it is shown that the official violated a statutory or constitutional right that was " 'clearly established' " at the time of the challenged conduct. *Ashcroft v. al–Kidd,* 563 U.S. [731] 131 S.Ct. 2074, 2080, 179 L.Ed.2d 1149 (2011). And a defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it. *Id.,* at 2083–2084. In other words, "existing precedent must have placed the statutory or constitutional question" confronted by the official "beyond debate."

*Plumhoff*, 134 S.Ct. at 2023.

The U.S. Supreme Court has thus stressed that a plaintiff's burden of demonstrating that defendants violated "clearly established law" requires not a citation to generalized principles of law, but, rather, specific authority which "placed the statutory or constitutional question" confronted by the official "beyond debate." *Id.* The Fifth Circuit has similarly written that, in the qualified immunity context, "[w]e do not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden on plaintiffs." *Pierce v. Smith*, 117 F.3d 866, 872 (5th Cir. 1997). Making the plaintiff's burden in this context even more difficult, the Supreme Court wrote in *City and County of San Francisco v. Sheehan*, 135 S.Ct. 1765, 1778, 191 L.Ed.2d 856 (2015) that, to establish that any supportive precedent was "clearly established," the plaintiff must be able to cite either a decision from that Court or a "robust consensus of cases of persuasive authority in the Courts of Appeals." It should thus be apparent that rebutting a qualified immunity defense is a tall order even for those plaintiffs who bother to actually respond to it, and this court can discern no scenario in which non-responding plaintiff might be held to have rebutted it.

In their brief, defendants clearly raise a good faith qualified immunity defense, arguing that neither of the two prongs of the qualified immunity standard are met in this case. Defendants argue in the brief that there was no constitutional violation under the facts of the case, since:

> Officer Falatko came upon Plaintiff in a car wash known to be an area of frequent criminal conduct. The Plaintiff was parked in a car wash, but his car was not being washed. Falatko approached the Plaintiff's car as he was entitled to do. He spoke with the Plaintiff who remained in his car. In so doing, and with the window rolled down, Falatko detected the smell of marijuana, an illegal substance in the state of Mississippi. Based upon this, Falatko developed probable cause of the possible commission of a crime. He had the Plaintiff exit his vehicle, and, with Defendant Forbert's help, cuffed and briefly detained the Plaintiff so that the Plaintiff's vehicle could be searched. Ultimately, no marijuana was found; the Defendant officers did find a firearm that, per

federal law, Plaintiff was not allowed to possess. Thus, the gun was confiscated, but Plaintiff was otherwise allowed to leave on his own.

[Brief at 13].

With regard to the "clearly established law" in this context, defendants argue that:

Importantly, police officers who "reasonably but mistakenly conclude that probable cause is present" are entitled to qualified immunity. *Hunter v. Bryant,* 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991)). Similarly, "[t]he Constitution does not guarantee that only the guilty will be arrested. If it did, §1983 would provide a cause of action for every defendant acquitted – indeed, for every suspect released." *Baker v. McCollan,* 443 U.S. 137, 145 (1979). Of course, the Plaintiff herein was released, but the fact that he was not charged with a crime does not negate the probable cause which existed concerning the odor of marijuana which led to his detention.

[*Id*. at 13-14]. Without question, defendants make a good faith assertion of a qualified immunity defense in their brief, which placed the burden upon plaintiff to rebut that defense, as to each prong of the qualified immunity standard. Obviously, a plaintiff who did not even respond to the motion can not be said to have rebutted the qualified immunity defense, and this court therefore concludes that Falatko and Forbert's qualified immunity defenses must be sustained in this case.

As to his claims against Desoto County, plaintiff faces a similarly onerous burden, in the form of the U.S. Supreme Court's decision in *Monell v. Dep't of Soc. Serv.,* 436 U.S. 658, 694 (1978). Under *Monell* and its progeny, a municipality may only be held liable under § 1983 for violating a citizen's constitutional rights if "the governmental body itself 'subjects' [that] person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011). Governmental entities are "responsible only for [their] own illegal acts" and are "not vicariously liable under § 1983 for [their] employees' actions." *Id.* Thus, there is no respondeat superior liability under § 1983; rather, the key to municipal liability is demonstrating that a deprivation of a constitutional right was inflicted pursuant to an official policy or custom of the municipality in question. *Monell*, 436 U.S. at 694 (1978). The alleged

unconstitutional conduct asserted "must be directly attributable to the municipality through some sort of official action or imprimatur." *Piotrowski v. City of R.H.,* 237 F.3d 567, 578 (5th Cir. 2001).

To establish constitutional liability under *Monell*, a plaintiff must demonstrate (1) an official policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom. *Rivera v. R.H. Indep. Sch. Dist.,* 349 F.3d 244, 247-249 (5th Cir. 2003). A "policy or custom" can be either (1) a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or (2) a persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. *McGregory v. City of Jackson,* 335 Fed. App'x. 446, 448-449 (5th Cir. 2009).

This case involves an allegedly unlawful seizure by two Desoto County Sheriff's deputies, neither of whom can be said to have been the final policymakers for the County. Moreover, plaintiff does not, at any point in his complaint, allege any facts which would support a conclusion that his detention by Falatko and Forbert was made pursuant to an official county policy or custom. Desoto County's motion for summary judgment is therefore due to be granted as to the federal claims against it. As to plaintiff's state law claims, his amended complaint is very much unclear regarding the demarcation line between any federal and state claims, which makes it difficult for this court to even address them in the absence of responsive briefing. Nevertheless, it seems clear that the state law claims relate to conduct which was made in the course and scope of Falatko and Forbert's official duties, and they therefore fall under the scope

of the Mississippi Tort Claims Act. *See* Miss. Code Ann. § 11-46-7. Plaintiff has offered no rebuttal to defendant's argument that he failed to file any pre-suit notice under the MTCA, nor has he responded to defendant's arguments that any such state law claims would lack substantive merit under Mississippi law. This court finds defendants' arguments in this context to be persuasive, and any state law claims asserted by plaintiff will therefore be dismissed as well.

In light of the foregoing, it is ordered that defendants' motion for summary judgment is granted.

A separate judgment will be entered this date, pursuant to Fed. R. Civ. P. 58.

This, the 6th day of January, 2020.


/s/ Michael P. Mills
U.S. DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI